UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **SARAH GEIGER** | **CASE NO. 6:22-CV-00374** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **GRAVOIS ALUMINUM BOATS L L C** | **MAGISTRATE JUDGE DAVID J. AYO** |

**REPORT AND RECOMMENDATION**

Before this Court is a MOTION FOR PARTIAL SUMMARY JUDGMENT filed by plaintiff Sarah Geiger ("Geiger"). (Rec. Doc. 36). Defendant Gravois Aluminum Boats, LLC ("GAB") opposes this motion. (Rec. Doc. 48). Also before this Court is a MOTION TO CONSOLIDATE filed by GAB. (Rec. Doc. 19). Geiger opposes the motion as to the instant suit. (Rec. Doc. 30).[1]

The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, the Court recommends that the MOTION FOR PARTIAL SUMMARY JUDGMENT (Rec. Doc. 36) be GRANTED in part and DENIED in part and that GAB's MOTION TO CONSOLIDATE (Rec. Doc. 19) be GRANTED.

**Factual Background**

Geiger is a former GAB employee who is married to GAB's former CEO, Christopher Allard ("Allard"). Geiger and Allard are presently engaged in divorce proceedings in the 16th Judicial District Court for Iberia Parish, Louisiana. (Rec. Doc. 58 at p. 1). Geiger's federal suits, numbering three in all, claim breaches of various agreements allegedly confected between Geiger and GAB.

---

[1] All other pending motions in this suit will be addressed separately. (*See*, Rec. Docs. 25, 38, 47).

Geiger's first suit, Civil Action No. 22-CV-374, asserts claims based on an Act of Sale of Stock ("Stock Sale") whereby GAB purchased 40 shares of stock in Evolution Trailer Technologies, Inc. ("Evolution"), a corporation owned by Geiger and Allard. Geiger alleges the parties negotiated a sale price of $100,000 for her Evolution shares and a promissory note granting GAB a three-year period to tender the purchase price at 5% interest, compounded annually. (Rec. Doc. 18 at ¶¶ 5 – 8). Geiger's Amended Complaint asserts claims for: (1) breach of promissory note; (2) breach of the Stock Sale; and (3) rescission of the sale. (*Id.*, generally). This suit will be referred to as "*Geiger I.*"

Geiger's second suit, Civil Action No. 22-CV-5877, asserts claims based on a severance agreement allegedly negotiated with Allard in his capacity as CEO of GAB. Geiger claims that after leaving GAB because she was not being fairly compensated for her role as President, Allard convinced Geiger to rejoin GAB in a consulting capacity. In return, Geiger alleges the parties negotiated a Severance Agreement, dated June 9, 2017 stating

> [i]n lieu of the 25% ownership prev[iously] offered and in recognition of the hard work and amazing results that Sarah accomplished in her tenure at Metal Shark we agree to the following 10-year retirement package, to include the following terms: [1] 10-year severance of $300,000 per year salary effective from date of final agreement execution[,] [2] Retention of benefits for the term of the agreement[, and] [3] Agreement can be bought out, early, at full value by the company at any time for any reason.

(Civ. Act. No. 22-CV-5877, Rec. Doc. 22 at ¶ 27).

Geiger alleges that the Severance Agreement was never reduced to longform because

> Metal Shark's legal counsel advised GAB should instead execute a transfer of financial interest and amend the company's Operating Agreement. The Operating Agreement revision – though agreed in substance – stalled due to disagreements between [Allard] and Mr. Gravois and was never formally executed.

(*Id.* at ¶ 29). This suit will be referred to as "*Geiger II.*"

2

Geiger's third suit, originally filed in the Sixteenth Judicial District Court, Iberia Parish, Louisiana and recently refiled in the Western District of Louisiana as Civil Action No. 23-CV-1379, is based on an agreement Geiger alleges resulted from the recommendations of Metal Shark's counsel referenced above. Specifically, Geiger claims that after substantial negotiation between Allard, GAB founders Jimmy and Donna Gravois, and attorneys for Metal Shark, Allard presented Geiger with a Letter of Intent ("LOI") dated August 3, 2017 and a consent signed by Jimmy Gravois. The LOI expressed an intent to transfer an ownership interest from Allard to Geiger according to La. R.S. 12:1330(A) and a correlating intent to amend GAB's Operating Agreement to reflect Geiger's new role as a silent owner. Geiger alleges Allard was to transfer a partial 25% interest in GAB to her, giving Geiger the financial portion of those shares and retaining for himself the management and voting rights. (Civ. Act. No. 23-CV-1379 at Rec. Doc. 1 at ¶¶58 – 59). After several delays, Geiger asserts that she and Allard executed an Assignment Agreement dated September 12, 2017 conveying to Geiger "a Twenty-Five Percent (25%) financial, non-managerial interest in [GAB] (the 'Assigned Interest') in accordance with La. R.S. 12:1330(A) by the execution and delivery of th[e] Assignment." (*Id.* at ¶ 67). Jimmy Gravois executed a related "Consent" in which he consented to the conveyance of the Assigned Interest. (*Id.* at ¶ 68). Ultimately, the correlating changes to the Operating Agreement were never formalized. (*Id.* at ¶ 87). Geiger claims she nevertheless was paid in accordance with the Assignment Agreement and was consulted formally and informally on matters impacting ownership interests. (*Id.* at ¶ 101). In September 2021, having enjoyed the benefits of the Assignment Agreement without issue since 2017, Geiger claims her paychecks and bi-weekly owner's distributions ceased and she only became aware of this when she discovered "her bank account was in arrears." (*Id.* at ¶ 103). Geiger alleges Allard and others undertook a concerted effort to redirect the financial benefits she received under the Assignment Agreement to Allard and to hide this income.

3

(*Id.* at ¶¶ 105 – 106). Thereafter, Geiger was informed of the prospective equity purchase in GAB by Allied Development, Inc., an affiliate of Barka Global LLC and GAB's "dire financial straits" by GAB's counsel. She was given one week to agree to a $150,000 buyout of her 25% interest. Geiger did not agree. (*Id.* at ¶¶ 120 – 123). Geiger alleges a variety of misrepresentations were made to her by GAB and its representatives in an attempt to convince her that GAB discontinued her ownership distributions out of financial necessity while other company executives were awarded raises. (*Id.* at ¶¶ 131 - 149). Geiger seeks declaratory relief recognizing her 25% ownership interest, injunctive relief preventing GAB from further mergers, acquisitions, divestitures, or dissolutions, as well as judgment awarding damages for GAB's alleged deception and deprivation of her ownership interest. (*Id.* at ¶¶ 151 – 154). This suit is referred to as "*Geiger III.*"

*Partial Summary Judgment*

Geiger seeks summary judgment (1) imposing upon GAB liability for agreed-upon consideration for the sale of her 40 shares of Evolution to GAB; (2) certifying such award as a final judgment pursuant to Fed. R. Civ. P. 54(b); and (3) declaring that the promissory note suit does not arise out of the same transaction or occurrence and is not, thus, subject to Defendants' *lis pendens* and *res judicata* defenses. (Rec. Doc. 36-1 at p. 15).

Summary judgment is appropriate when there exists "no genuine dispute as to any material fact and moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may grant partial summary judgment as to some, but not all claims or defenses. *Id.*; *Liberty Mutual v. Gunderson*, 387 Fed. App'x. 480 (5th Cir. 2010) (discussing appellate review of partial summary judgment granted by a district court under Fed. R. Civ. P. 54(b)).

A disputed fact is material if proof of its truth or falsity might affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Allen v. U.S.P.S.*, 63 F.4th 292 (5th Cir. 2023). A "genuine issue" exists where evidence offered in support of or against the existence of any material fact "'is such that a reasonable jury could return a verdict for the nonmoving party.'" Fed. R. Civ. P. 56(c); *Watkins v. Tregre,* 997 F.3d 275, 281 (5th Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment has the initial burden of establishing the basis for its motion and identifying those parts of the record that demonstrate no genuine issue of material fact exists which precludes judgment in its favor as a matter of law. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). However, where the nonmoving party will bear the burden of proof at trial, the movant may fulfill its burden by pointing out an absence of evidence in the record to support that burden and, in so doing, transfer the burden of proof to the nonmoving party. Thereafter, the nonmoving party may only evade summary judgment by demonstrating the existence of a genuine issue of material fact. *Celotex*, supra; *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 – 19 (5th Cir. 1995) (internal citations omitted). Where a nonmoving party cannot produce evidence to support one or more essential elements of a claim, summary judgment is appropriate. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

When presented with a motion for summary judgment, the court must "construe 'all facts and inferences in the light most favorable to the nonmoving party.'" *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 175 (5th Cir. 2018)).

Geiger's motion seeks a judgment finding GAB liable for non-payment of the purchase price of the 40 Evolution shares GAB purchased pursuant to the 2018 Stock Sale; finding that Geiger's claims in *Geiger I* do not arise out of the same transactions and occurrences as

5

those from which *Geiger II* and *III* arose; and certifying such judgment as final for appellate purposes under Fed. R. Civ. P. 54(b). (Rec. Doc. 36 at p. 2).

Geiger's Amended Complaint states three alternative causes of action: (1) for breach of the promissory note; (2) for breach of the Stock Sale; and (3) for rescission of the Stock Sale.

Louisiana law, the application of which neither party contests, dictates that an unsigned promissory note is unenforceable. *Palmisano v. Nauman-Anderson*, 167 So. 3d 891, 894 – 95 (La. App. 5 Cir. 1/28/2015). Here, as in *Palmisano*, the Court is presented with an unsigned promissory note which purports to memorialize a loan. (Rec. Doc. 36-4 at p. 12). Although the promissory note is unsigned, the underlying loan obligation may still be enforceable since Louisiana law does not require a promissory note to render an otherwise written or oral loan agreement valid. *Id.* at 895; La. Civ. C. Art. 1927.

Turning to Geiger's claim for breach of the Stock Sale, such a claim requires proof of three elements under Louisiana law: (1) the existence of a valid contract; (2) breach of the contract by the defendant; and (3) resulting damages. *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 283 (5th Cir. 2023).

Rule 36 governs requests for admissions in cases before federal district courts. *Poon-Atkins v. Sappington*, 2022 WL 102042 *1 (5th Cir. 2022). An admission made in response to such request carries with it the conclusive effect of a judicial admission and removes the content of the admission from issue. *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 – 77 (5th Cir. 2001). GAB's responses to requests for admission in this case constitute judicial admissions as to the first element of Geiger's claim for breach of contract – the existence of a valid contract – as it admits GAB "purchased" the Evolution shares "pursuant to an August 31, 2018 Act of Stock Sale[.]" (Rec. Doc. 36-6 at p. 1). GAB's response is bolstered by its

6

subsequent answer to Geiger's Interrogatory No. 11. Interrogatory 11 asks whether GAB agreed "to pay Plaintiff one hundred thousand ($100,000) in exchange for 40 shares of stock of Evolution Trailer Technologies, Inc." (Rec. Doc. 36-8 at p. 1) GAB's response states "Subject to the foregoing [objections], Defendant answers Yes to this interrogatory, pursuant to and as set forth in (and only in) the Act of Stock Sale referenced above."[2] (Rec. Doc. 36-8 at pp. 1 – 2). GAB's referenced objections do not contest the existence or validity of the contract, but primarily its defenses centered on its counterclaims for compensation allegedly received by Geiger, to which GAB claims she was not entitled. (*Id.*).

Louisiana law requires a valid contract of sale to feature capacity, mutual consent, a certain object, an agreed purchase price, and the consent of the parties. *Thomas v. Ameritas Life Ins. Co.*, 34 F.4th 395, 401 (5th Cir. 2022) (citing *Granger v. Christus Health Cent. La.*, 144 So. 3d 736 (La. 2013)). The record before this Court discloses no basis upon which either party might be found to lack capacity to contract. GAB's admission and related response to interrogatory referenced above reflect the mutual consent of the parties, a certain, lawful object (Geiger's 40 Evolution shares), and an agreed purchase price ($100,000). Thus, the evidence presented supports a finding that the parties entered into a valid contract of sale, wherein Geiger agreed to sell and GAB agreed to purchase Geiger's 40 shares of Evolution stock for the agreed purchase price of $100,000.

Geiger's Request for Admission No. 4 asks GAB to "admit that You own 100% of the stock in Evolution Trailer Technologies, Inc." GAB's response is "[a]dmitted." (Rec. Doc. 36-6 at p. 3). GAB's admission is further supported by its Response to Interrogatory No. 12, in

---

[2] The Stock Sale expressly provides that the agreed purchase price for the 40 shares of Evolution stock purchased by GAB is "the sales price of ONE HUNDRED THOUSAND AND 00/100 ($100,000.00) DOLLARS (the "Purchase Price")…" (Rec. Doc. 36-4 at p. 4).

which it claims that, while it has not "paid Plaintiff one hundred thousand dollars ($100,000) in exchange for 40 shares of Evolution…[,] the "transfer of Interest (of the 40 shares of stock) from [Geiger] to [GAB]" was accomplished via the Stock Sale, which included language that the shares were transferred " 'in exchange for the sale price of' $100,000 immediately defines that amount as '(the 'Purchase Price'), the receipt of which is hereby acknowledged.'" (Rec. Doc. 36-8 at p. 2). Taking this admission and response to interrogatory together, GAB's contention is clearly that it took possession and control of Geiger's 40 Evolution shares pursuant to the Stock Sale but did not tender the purchase price of $100,000. Documentary evidence offered by Geiger further supports a finding that GAB did not tender the purchase price. Emails between Geiger and Nate Geiger, GAB's then-CFO, support the finding that GAB acknowledged its failure to tender the purchase price on or before February 5, 2019. (Rec. Doc. 36-5 at p. 2). Further email correspondence in October of 2021 revealed that Nate Geiger had been advised by counsel not to speak to Geiger concerning, *inter alia*, this issue. (*Id.* at p. 1). GAB offers affirmative defenses regarding why it does not owe the purchase price, but those defenses depend upon the success of its counterclaim, which this Court notes is merely permissive as it does not pertain to the contract of sale at issue in *Geiger I*. Fed. R. Civ. P. 13; *Tank Insulation Int'l., Inc. v. Insultherm, Inc.*, 104 F.3d 83, 86 (5th Cir. 1997) (noting that a counterclaim is compulsory when it raises common issues of law or fact, would be barred by the doctrine of *res judicata* if not joined with the plaintiff's claim, would be supported or refuted by substantially the same evidence before the court on plaintiff's claim, or bears a logical relationship to plaintiff's claim).

      GAB's opposition to the instant motion offers no evidence refuting the validity of the Stock Sale or the purchase price set for the sale of Geiger's 40 Evolution shares. Instead, GAB's opposition points to a lack of discovery on its own counterclaim and affirmative defenses. (Rec. Doc. 48 at pp. 6 – 8). GAB's argument that summary judgment on this issue

8

would be improper based on a lack of discovery fails for two reasons. First, under Rule 56, a nonmoving party who opposes summary judgment on any issue based on a lack of discovery must specify what discovery it proposes to take and what support such discovery would provide to its opposition to the motion. *Smith v. Regional Transp. Auth.*, 827 F.3d 412 (5th Cir. 2016). GAB's assertion that other "secret agreements" between Geiger and Allard may provide a basis for a defense to payment of any amount found to be due omits that Geiger negotiated the sale of her shares to GAB, who admits that it purchased them, but did not tender the consideration contemplated among the parties. If, as GAB vaguely alleges, Allard's dealings with Geiger on GAB's behalf prejudiced GAB, those claims must be asserted against Allard, who is not a party to *Geiger I*. Moreover, GAB does not identify any specific evidence to which it does not already have access. Second, any lack of discovery in this suit is attributable to GAB's own litigation strategy. GAB's calculation that refusing to participate in discovery absent Geiger's agreement to consolidation would lower litigation costs[3] and strengthen its position carries with it the consequence of its refusal.

Although Geiger has established a valid contract and a breach by GAB, the damages element requires further analysis. As discussed above, evidence before this Court establishes minimum potential damages in the amount of the unpaid purchase price: $100,000. (*Id.*). Under Louisiana law, when a buyer fails to pay the agreed purchase price, a seller may either sue for specific performance – payment of the agreed purchase price by the buyer – or dissolution – return of the items conveyed to the buyer. La. Civ. C. Art. 2561; *Atl. Pac. Equip., Inc. v. Gulf South Servs., Inc.*, 342 So. 3d 898 (La. App. 1 Cir. 2022); *Collins v. Hill*, 265 So. 3d 1202 (La. App. 2 Cir. 2019). The parties have not briefed the issue of available remedies.

---

[3] This Court notes that GAB's refusal to engage in discovery to this point has actually fomented the filing of additional motions and arguably increased litigation costs in all three suits now pending.

GAB's counterclaim and affirmative defenses center on employee compensation paid to Geiger, to which GAB asserts she was not entitled. (Rec. Doc. 23 at ¶¶ 29 – 35). This Court does not agree with GAB's contention that its counterclaim and affirmative defenses preclude summary judgment on the issue of liability under the Stock Sale. Although GAB may ultimately prove its counterclaim and, accordingly, assert its right to set off as to any damages due Geiger on the totality of her claims, set off regards liquidated damages and only becomes relevant once liability and damages are adjudicated as to each claim. La. Civ. C. Art. 1893; *Admin-Media, LLC v. AC of Lafayette, LLC*, 297 So. 3d 44 (La. App. 3 Cir. 3/11/2020). For this reason, a finding of liability against GAB on Geiger's claim for breach of contract in this suit does not prejudice any party.

*Consolidation*

Federal Rule of Civil Procedure 42 permits but does not require a court to consolidate two or more civil cases featuring one or more common questions of law or fact. After a finding on the issue of liability in *Geiger I* is entered, consolidation of the remaining damages issue with *Geiger II/III*[4] would appear proper, since Geiger's claims in *Geiger II* and *III* share issues of law and fact related to her employment relationship with GAB and GAB's counterclaim and affirmative defenses are asserted as to all claims. Consolidation would also solve a variety of issues raised in the pending motions, including preserving GAB's right to litigate its counterclaims and affirmative defenses, narrowing the issues based on GAB's admissions in *Geiger I*, permitting appropriate discovery regarding GAB's counterclaim and affirmative defenses, and reducing litigation costs where possible. Fed. R. Civ. P. 42; *Mills v. Beech Aircraft Corp.*, 886 F.2d 758 (5th Cir. 1989); *Hall v. Hall*, 138 S.Ct. 1118, 584 U.S.A

---

[4] Geiger does not oppose the consolidation of *Geiger II* and *Gieger III*. (Rec. Doc. 36-1 at p. 7, n. 3).

10

--- (2018) (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2383, p. 10 (3d ed. 2008) (consolidation of two or more suits is a matter within the broad discretion of the district court)). Although this Court has expressed the view that Geiger's claims in the instant suit do not arise from the same nucleus of operative facts as those advanced in her subsequent suits, as argued by GAB, consolidation of these suits also provides the benefit of mooting Geiger's concerns regarding application of the doctrine of *res judicata* to her claims for employee compensation in *Geiger II* and *Geiger III*. Considering the needs of this case and the efficiency gained by including the issue of consolidation in this Report and Recommendation, the undersigned will also recommend consolidation in keeping with the foregoing analysis.

### *Certification under Federal Rule of Civil Procedure 54(b)*

Federal Rule of Civil Procedure 54(b) provides in pertinent part:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). Assuming consolidation, the consolidated actions present multiple claims and counterclaims between multiple parties. This Court finds, however, that the complexity of such claims, counterclaims, and parties in the consolidated matters would be best served by a traditional appellate posture. Additionally, this Court finds no "danger of hardship or injustice through delay which would be alleviated by immediate appeal" of any judgment resulting from this Report and Recommendation. *PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996). For these reasons, this Court will recommend Geiger's motion be denied regarding certification of any resulting judgment under Fed. R. Civ. P. 54(b).

11

## Conclusion

For the reasons discussed herein, this Court recommends that the MOTION FOR PARTIAL SUMMARY JUDGMENT (Rec. Doc. 36) filed by plaintiff Sarah Geiger be GRANTED in part such that a judgment issue affirming the validity of the 2018 Act of Sale of Stock executed among the parties and adjudging Defendant Gravois Aluminum Boats liable for breach of the Act of Stock Sale by non-payment.  It is recommended that Geiger's Motion for Partial Summary Judgment be DENIED as to the quantum of damages attributable to the Defendant's breach of contract, preserving this issue for further proceedings.  It is further recommended that Geiger's motion be DENIED insofar as it seeks certification of such judgment as final and appealable under Fed. R. Civ. P. 54(b) and DENIED as MOOT insofar as it seeks a judgment preempting any defenses of *res judicata* by GAB.  This Court further recommends that Plaintiff's later-filed suits, Civ. Act. Nos. 22-CV-05877 and 23-CV-1379 be consolidated with the instant suit, including GAB's counterclaim and affirmative defenses, for all further proceedings.  Accordingly, it is recommended GAB's MOTION TO CONSOLIDATE (Rec. Doc. 19) be GRANTED.  It is finally recommended that the resulting consolidated cases be referred to the undersigned for scheduling conference to permit the scheduling of pretrial conference and trial dates and the issuance of an appropriate Scheduling Order as soon as is practicable.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following

the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. USAA*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

**THUS DONE** in Chambers, Lafayette, Louisiana on this 26th day of January, 2024.

_____
**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**